1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8   WILD FISH CONSERVANCY, et al.,

9                    Plaintiffs,

10         v.

11   NATIONAL PARK SERVICE, et al.,

12                    Defendants.

CASE NO. C12-5109 BHS

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS

13

14         This matter comes before the Court on Defendants Robert Elofson, Mike

15   McHenry, Doug Morrill, and Larry Ward's ("Tribal Defendants") motion to dismiss

16   (Dkt. 114).  The Court has considered the pleadings filed in support of and in opposition

17   to the motion and the remainder of the file and hereby grants the motion for the reasons

18   stated herein.

19                              **I. PROCEDURAL HISTORY**

20         On November 11, 2012, Plaintiffs Wild Fish Conservancy, Wild Steelhead

21   Coalition, Federation of Fly Fishers Steelhead Committee, and Wild Salmon Rivers d/b/a

22   the Conservation Angler ("Plaintiffs") filed a first supplemental complaint for declaratory

1 and injunctive relief against Defendants National Park Service; Jonathan B. Jarvis, in his

2 official capacity as the Director of the National Park Service; United States Department

3 of the Interior; Kenneth L. Salazar, in his official capacity as the Secretary of the United

4 States Department of the Interior; United States Fish and Wildlife Service; Daniel M.

5 Ashe, in his official capacity as the Director of the United States Fish and Wildlife

6 Service; United States Department of Commerce; John E. Bryson, in his official capacity

7 as the Secretary of the United States Department of Commerce; NOAA Fisheries Service

8 ("NMFS"); Samuel D. Rauch III, in his official capacity as the Acting Assistant

9 Administrator for Fisheries of NOAA Fisheries Service (collectively "Federal

10 Defendants"); and the Tribal Defendants.  Dkt. 66

11        With regard to the Tribal Defendants, Plaintiffs assert one cause of action against

12 the Tribal Defendants for unauthorized take of protected species in violation of Section 9

13 of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544.  Dkt. 1, ¶¶ 183–187.

14        On December 20, 2012, the Tribal Defendants filed a motion to dismiss for lack of

15 subject matter jurisdiction.  Dkt. 114.  On January 7, 2013, the Federal Defendants

16 responded (Dkt. 116) and Plaintiffs responded (Dkt. 117).  On January 11, 2013, the

17 Tribal Defendants replied.  Dkt. 119.  On January 14, 2013, Plaintiffs filed a surreply.[1]

18 Dkt. 122.  On February 5, 2013, the Tribal Defendants filed a notice of supplemental

19 authority.  Dkt. 123.

20

21        [1] Plaintiffs move to strike the Federal Defendants' response because it supports the
motion to dismiss and Plaintiffs will not have an opportunity to respond.  Although the Federal
Defendants' response does not contain material substantially different from the motion, the Court
22 will not consider the response in determining the motion.

1    On February 7, 2013 the Court granted Plaintiffs' motion for leave to file an

2  amended complaint.  Dkt. 124.

3                              **II. FACTUAL BACKGROUND**

4    The Tribe operates multiple hatchery programs pursuant to a Hatchery and

5  Genetic Management Plan ("HGMP") developed through a collaborative process

6  involving the Tribe, the independent, congressionally chartered Hatchery Scientific

7  Review Group ("HSRG"), and various federal and state agencies, including NMFS,

8  FWS, the National Park Service ("NPS"), the United States Geological Survey

9  ("USGS"), and the Washington Department of Fish and Wildlife ("WDFW").  *See* Dkt.

10  99 at 3–4.  The Tribal Defendants contend that "the HGMPs were carefully crafted and

11  exhaustively reviewed to achieve these goals and to minimize potential risks to

12  threatened salmonids."  Dkt. 114 at 3.

13    Originally, Plaintiffs alleged that the Tribal Defendants were operating these

14  hatchery programs without the proper permits and/or approvals from the government.

15  *See* Dkt. 1.  Late last year, everything changed because the government issued new

16  approvals.  Specifically, on December 10, 2012, NMFS formally approved the Tribe's

17  four HGMPs and the state of Washington's HGMP for its Chinook salmon hatchery

18  program, pursuant to 50 C.F.R. § 223.203(b) ("the 4(d) Rule").  *See* Doc. 111-1 (4(d)

19  Rule Limit 6 Evaluation and Recommended Determination); Doc. 111-2 (Decision

20  Memorandum).  The Deputy Regional Administrator's Decision Memorandum provides

21  as follows:

22

1          The five Elwha River salmon and steelhead supportive breeding
   programs are not new, and all incorporate best management practices and
2          hatchery reforms considered necessary to provide for program operation
   while minimizing potential risks to ESA-listed species. Given that removal
3          of the Elwha dams has made natural habitat inhospitable for natural origin
   fish in the lower Elwha River where salmon and steelhead production has
4          been confined for 100 years, and the term of recovery of river and estuary
   habitat needed to sustain natural production is highly uncertain, the
5          proposed hatchery programs are widely supported in the regions' salmon
   management and scientific communities to reduce the risk that salmon and
6          steelhead populations remaining in the Elwha River from becoming
   extirpated.
7
*Id*. at 3.  In addition, NMFS prepared a Biological Opinion ("BiOp") and issued an
8
Incidental Take Statement ("ITS").  *See* Dkt. 11–3.
9
          The agencies' approvals accordingly exempt the hatchery programs from the
10
"take" prohibition with respect to potential effects on threatened Puget Sound steelhead,
11
Puget Sound Chinook salmon, and bull trout.  In approving the Tribe's HGMPs and joint
12
resource management plan ("RMP") with the State, NMFS expressly provided that its
13
approval exempts the programs from the "take" prohibition:
14
          NMFS has reviewed the five plans provided by the [Lower Elwha
15     Klallam Tribe ("LEKT")] and WDFW pursuant to limit 6 of the 4(d) Rule,
   and evaluated them together against the requirements of the 4(d) Rule.
16     Based on this evaluation, NMFS' determination is that activities
   implemented as described in the five plans would not appreciably reduce
17     the likelihood of survival and recovery of ESA-listed Puget Sound Chinook
   salmon or steelhead, and that the plans address all of the criteria specified
18     in Limit 5 of the 4(d) Rule. If the Regional Administrator concurs with this
   recommended determination, take prohibitions would not apply to activities
19     implemented in accordance with the five co-manager HGMPs composing
   the hatchery RMP for salmon and steelhead populations in the Elwha River
20     watershed.

21

22

1   Doc. 111-1 at 66; *see also* Doc. 111-2 at 7 (Regional Administrator, concurring).  The

2   ITS's issued by NMFS and FWS also recognize the exemption from potential "take"

3   liability that they provide.  *See* Doc. 111-3 at 185; Doc. 100-1 at 43; Doc. 100-3 at 41.

4          The parties dispute the legality of the hatcheries' current operations.  In the

5   amended complaint, Plaintiffs allege that the Tribal Defendants are not operating their

6   hatcheries in accordance with the government's approval that was issued on December

7   10, 2012.  Dkt. 115–1, ¶¶ 23, 26.  Plaintiffs, however, have failed to allege that they

8   provided the Tribe written notice of specific violations.   Mr. Morrill declares that the

9   Tribal Defendants are operating the hatchery program in conformity and compliance with

10  the government issued approvals.  Dkt. 120, Declaration of Doug Morrill, ¶ 2.

11                                **III. DISCUSSION**

12         As a threshold matter, this appears to be an issue that could have been resolved via

13  stipulation because every position Plaintiffs present in opposition has been squarely

14  rejected.  To summarize, the case law makes sense: once the government issues an

15  approval to take endangered species, the fight lies with the government and not the entity

16  that received such approval.  There is, however, an exception to this general rule when

17  the entity is operating outside the scope of the permit.  But, if such a circumstance exists,

18  the complaining party must give notice to the entity and an opportunity to cure the

19  alleged illegal operations before filing suit.  Although Plaintiffs allege that the Tribal

20  Defendants are operating outside of their permits, Plaintiffs have failed to give the Tribal

21  Defendants notice of specific acts that can be cured.  Therefore, the Tribal Defendants

22

1   shall be dismissed and the matter can proceed with Plaintiffs' challenges to the

2   government decisions and actions.[2]

3          Article III of the United States Constitution limits the federal courts' jurisdiction

4   to actual cases or controversies, *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d

5   1118, 1123 (9th Cir. 1997), and "prohibits federal courts from taking further action on the

6   merits in moot cases," *Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*, 257 F.3d 1071,

7   1076 (9th Cir. 2001).  Whenever a case loses its character as a present, live controversy,

8   it is moot. *Am. Rivers*, 126 F.3d at 1123.  "[A]n actual controversy must be extant at all

9   stages of review, not merely at the time the complaint is filed." *Ctr. for Biological*

10  *Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 804 (9th Cir. 2008) (citations omitted).

11         The Tribal Defendants argue that Plaintiffs' claim against them has become moot.

12  "The party asserting mootness bears a 'heavy' burden; a case is not moot if any effective

13  relief may be granted." *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006,

14  1017 (9th Cir. 2012) (citation omitted).  Declaring an issue moot "is justified only when

15  it is 'absolutely clear' that the litigant no longer has 'any need of the judicial protection

16  that it sought.'" *Id*. (citing *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 224

17  (2000) (per curiam)).

18

19

20

21         [2] This summary serves two puposes: (1) to summarize the following discussion and (2) to
    highlight the reccurring theme that both the Court's and the parties' resources are being
22  unnecessarily consumed with matters that could be resolved more efficiently.

1    Although the Tribal Defendants have acquired approval for their activities from

2  the government, Plaintiffs argue that their claim is not moot.  First, Plaintiffs claim that

3  there will be future violations:

4        Chambers Creek steelhead released by the Elwha Defendants will
        continue to return to the Elwha River for the next two to three years. Dkt.
5        70, ¶¶ 50, 52. These highly-domesticated fish will continue to harm ESA-
        listed steelhead. Id. at ¶¶ 52-53. The Court therefore retains jurisdiction to
6        enter injunctive relief to counteract the continuing effects of these unlawful
        releases. See Gordon, 849 F.2d at 1245. Such relief may include ordering
7        Elwha Defendants to maintain hatchery gates open during Chambers Creek
        steelhead returns and to staff the hatchery holding ponds in an effort to
8        intercept as many of these fish as possible. See Dkt. 70, ¶ 52.

9  Dkt. 117 at 12.  The Tribal Defendants counter that it

10        has already committed to "keep open the hatchery outfall gates during the
        period of Chambers Creek returns and . . . harvest all Chambers Creek fish
11        that return to the hatchery." Doc. 103 ¶38. Under the native steelhead
        HGMP, weirs and traps will be operated at the hatchery "to collect and cull
12        the last remaining returns of marked, early-returning Chambers Creek
        lineage adult steelhead." Doc. 114 at 22:5-7. NMFS's ITS is also clear that
13        "[t]he Action Agencies must ensure that [the Tribe] continue[s] to remove .
        . . any Chambers Creek steelhead encountered at weirs and traps or at the
14        hatchery." Doc. 111-3 at 193 ¶3d. Because the relief proposed by Plaintiffs
        is already required, it would not be meaningful for this Court to enter such
15        an order. And although Plaintiffs also argue that the Court "has jurisdiction
        to prevent future unlawful releases" of Chambers Creek fish, Doc. 117 at
16        13:2-3, the Tribe has permanently terminated the program, and there is
        nothing for the Court to enjoin.

17
Dkt. 119 at 7.  The Court finds that the Tribal Defendants have met their burden to show
18
that future illegal "take" will not occur.
19
     Second, Plaintiffs allege that the Tribal Defendants are not operating in
20
conformance with the newly issued approvals.  The ESA, however, requires Plaintiffs to
21
provide "notice of the violation." 16 U.S.C. § 1540(g)(2)(A)(1).  "The key language in
22

1  the notice regulation is the phrase 'sufficient information to permit the recipient to

2  identify' the alleged violations and bring itself into compliance.'" *Waterkeepers*

3  *Northern California v. AG Industrial Mfg., Inc.*, 375 F.3d 913 (9th Cir. 2004) (quoting

4  *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 951 (9th

5  Cir. 2002)). It is undisputed that Plaintiffs have failed to provide any notice of any

6  alleged violation. Even in their brief, Plaintiffs only allege that "available information

7  indicates that the Defendants do not have adequate funding to conduct even one year of

8  the most basic monitoring and adaptive management activities required for their hatchery

9  programs." Dkt. 117 at 24.[3] On the other hand, the Tribal Defendants have submitted

10  evidence that the hatchery programs are operated in compliance with the government's

11  approvals. Therefore, the Court finds Plaintiffs' argument meritless.

12        Finally, Plaintiffs request that the Court hold an evidentiary hearing or allow them

13  leave to conduct discovery. Neither of these actions is appropriate. With regard to an

14  evidentiary hearing, Plaintiffs must offer more specific allegations than the general

15  "Defendants' hatchery activities causing take are ongoing." Dkt. 117 at 24. In order to

16  enter a finding of fact, Plaintiffs would have to provide evidence or sufficient information

17  to identify an alleged violation. They have failed to do this. With regard to discovery,

18  Plaintiffs have failed to show a need for Court-ordered discovery because Plaintiffs have

19  failed to give the Tribal Defendants notice in the form of sufficient information of a

20  specific illegal act that can be corrected. Once this occurs and Tribal Defendants fail to

21

22        [3] Even if lack of "adequate funding" was a violation of the ESA, it's unclear whether the
Court has the power to order the Tribal Defendants to obtain "adequate funding."

ORDER - 8

1 | correct any such act, then a new action may be filed.  Therefore, the Court denies

2 | Plaintiffs' requests.

3 | ### IV. ORDER

4 | Therefore, it is hereby **ORDERED** that the Tribal Defendants' motion to dismiss

5 | (Dkt. 114) is **GRANTED** for lack of subject matter jurisdiction.  The Clerk shall

6 | terminate these Defendants.

7 | Dated this 12th day of February, 2013.

8

9

10

BENJAMIN H. SETTLE
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 9