UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILD FISH CONSERVANCY, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>NATIONAL PARK SERVICE, et al.,<br><br>  Defendants. | CASE NO. C12-5109 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO VACATE AGENCY ACTIONS |

This matter comes before the Court on Plaintiffs Federation of Fly Fishers Steelhead Committee, Wild Fish Conservancy, Wild Salmon Rivers, and Wild Steelhead Coalition's ("Plaintiffs') motion to vacate agency actions (Dkt. 200). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On March 26, 2014, the Court granted in part Plaintiffs' motion for summary judgment concluding that the Environmental Assessment ("EA") issued by NMFS on

ORDER - 1

December 12, 2012 was inadequate. Dkt. 191. Initially, the parties agreed to separate liability and remedies. After determining liability, the Court ordered the parties to meet and confer regarding remedies as well as limited interim releases of smolt. *Id*. Unable to reach an agreement, the parties submitted a proposed briefing schedule that the Court entered on April 24, 2014. Dkt. 199.

On May 19, 2014, Plaintiffs filed the instant motion requesting that the Court vacate two agency actions including the inadequate EA. Dkt. 200. On June 16, 2014, Amicus Curiae Lower Elwha Klallam Tribe ("Tribe") responded (Dkt. 203) and the Federal Defendants responded (Dkt. 204). On June 30, 2014, Plaintiffs replied and submitted new arguments and evidence in support of their position. Dkt. 207. On July 7, 2014, the Federal Defendants filed a surreply and moved to strike the new argument and evidence. Dkt. 209.[1]

## II. DISCUSSION

**A.  Mootness**

"A case is moot when the controversy isn't live any longer." *Kasza v. Browner*, 133 F.3d 1159, 1172 (9th Cir. 1998) (citing *Public Utilities Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996)).

In this case, the Federal Defendants argue that the issue of remedies is moot because NMFS has acted to remedy the error set forth in the Court's order. Specifically,

---

[1] The motion is **GRANTED**. Not only should experienced attorneys know and abide by the rules of procedure, but the Court has also repeatedly warned Plaintiffs' attorneys in this matter on this issue.

the Federal Defendants assert that NMFS "has already begun the process of issuing a new EA," which will result in a new final EA "long before the next scheduled steelhead broodstock collection activities or fish releases from the Tribal hatchery." Dkt. 204 at 8. This new final EA will "supersede the 2012 EA and resolve the lone NEPA deficiency" in the 2012 EA. *Id*. The Federal Defendants' confidence in the issuance of the superseding EA makes the Court curious as to the purpose of any public comment period and the agency's obligation to "give full and meaningful consideration to all reasonable alternatives . . . ." *N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1153 (9th Cir. 2008) (per curiam). The Court must insure that "the preparation of an EA . . . 'will not be used to rationalize or justify decisions already made.'" *Metcalf v. Daley*, 214 F.3d 1135, 1142 (9th Cir. 2000) (quoting *Save the Yaak Comm. v. Block*, 840 F.2d 714, 718 (9th Cir. 1988)). In any event, the Federal Defendants have failed to convince the Court that, because they have undertaken further evaluation with a predicted issuance date of a new final EA, the case is no longer live. Therefore, the Court concludes that the issue of remedies is not moot.

**B.     Remedy**

The Court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A). Although the statute appears to mandate vacating agency actions, "[i]n rare circumstances, when we deem it advisable that the agency action remain in force until the action can be reconsidered or replaced, we will remand without vacating the agency's action." *Humane Soc. of U.S. v. Locke*, 626

F.3d 1040, 1053 n.7 (9th Cir. 2010).  For example, "when equity demands, the regulation can be left in place while the agency follows the necessary procedures." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) (citing *Western Oil and Gas v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980)).  "Whether agency action should be vacated depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" *California Communities Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012) (citing *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)).  Finally, under the doctrine of "institutionalized caution," Congress has made "it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities . . . ." *Sierra Club v. Marsh*, 816 F.2d 1376, 1383 (9th Cir. 1987) (citation and quotation omitted).

### 1.     Agency's Errors

In this case, the Federal Defendants and the Tribe argue that the agency's error was not sufficiently serious to warrant vacating the EA.  Dkt. 204 at 10 ("not grave or substantive"); Dkt. 203 at 15 ("limited in nature").  The Court concluded that NMFS failed to adequately consider a reasonable alternative of reduced production levels at the Tribe's hatcheries.  Dkt. 191 at 17–21.  NMFS stated that "[t]his alternative will not be analyzed in detail because its effects would not be meaningfully different than the effects of Alternative 4 (No Hatchery Programs in the Elwha Basin)."  NMFS015403.  While the Tribe recognizes that further evaluation may result in different recommendations, including the possibility of an Environmental Impact Statement (Dkt. 203 at 8 n.2), the

Federal Defendants contend that such further evaluation will not change the outcome of its determination.  For example, the Federal Defendants assert that "the Court fully upheld NMFS's analysis of the environmental impacts of the hatchery programs, and its conclusion that the effect on the environment would not be significant." Dkt. 204 at 11.  Moreover, the Federal Defendants assert that "declining to consider a reduced hatchery release alternative was consistent with the regulatory inquiry" because they were only faced with the decision to approve or disapprove the proposed hatchery operations. *Id*.  Unfortunately, such assertions are contrary to binding precedent that requires the regulatory agency to give full and *meaningful* consideration to all reasonable alternatives and support the implication that reconsideration or reissuance of an EA *will* only be "used to rationalize or justify decisions already made.'" *Metcalf*, 214 F.3d at 1142 (9th Cir. 2000).  Regardless, the viable alternative of reduced releases could result in rejection of the proposed hatchery plans, and the Court concludes that this is a serious agency error.  Therefore, this factor weighs in favor of vacating the agency's action.

### 2. Interim Consequences

The Court is not an expert in determining the consequences that will flow from either vacating the agency's action or remanding with instructions.  The Court, however, gave the parties, armed with experts and more intimate knowledge of the environmental factors, an opportunity to meet and confer regarding smaller releases of smolt.  *See* Dkt. 193.  The meet and confer did not occur because the Tribe released all of the coho smolt at its hatchery beginning March 24, 2014 through the end of the day on March 27, 2014, which was at least a day and a half after the Court declared inadequate the EA approving


such a release. Dkt. 192 at 5–7. Moreover, the "No Action" alternative in the inadequate EA allows the hatcheries to operate under baseline conditions, which are hatcheries operations that began in 2005 for native steelhead and 2011 for native coho. NMFS015405. In other words, the Tribe has operated the hatcheries for years without federal approval and, once they obtained federal approval, it was inadequate. Thus, the consequences of vacating the agency action would be to maintain the status quo of operating the hatcheries at full capacity. Any argument to the contrary is meritless because vacating the EA is essentially the "No Action" alternative. If maintaining the status quo is the interim consequence, then there is no disruption in the interim. The Court recognizes that take without a clear legal exemption would likely result in additional legal action and injunctive relief, but that legal conundrum is a result of the unique facts and procedural posture of this dispute. Therefore, the Court concludes that this factor weighs in favor of vacating the EA.

Plaintiffs, however, request that the Court only partially vacate the EA. Dkt. 200 at 4–5. Plaintiffs, based on their experts, recommend that the Court authorize the release of 50,000 steelhead smolt and 50,000 coho smolt, which they claim will "ensure against any perceived risk of extirpation of Elwha River salmonid populations." *Id*. The Court, having found that both the seriousness of NMFS's error and the disruptive consequences of an interim change weigh in favor of vacating the EA, grants Plaintiffs' motion. In any event, Plaintiffs' proposal of partially vacating the EA provides the most reasonable interim process.

**C.   ESA Take Authorizations**

Plaintiffs request that the Court also vacate the ESA take authorizations associated with the hatchery operations. Dkt. 200 at 20–25. Plaintiffs argue that the "two agency actions are thoroughly interconnected and legally dependent upon one another." *Id*. at 20. The Federal Defendants and the Tribe, however, argue that the Court is without authority to set aside an agency action that has not been found to be arbitrary, capricious, or otherwise not in accordance with law. Dkt. 204 at 22–26; Dkt. 203 at 11–13. At this point, the Court agrees with the Federal Defendants and the Tribe. The issue may require a separate dispositive decision because the Court has rejected Plaintiffs' challenges to the lawfulness of the take authorizations. Dkt. 191. Therefore, the Court denies Plaintiffs' motion on this issue.

## III. ORDER

Therefore, it is hereby **ORDERED** that Plaintiffs' motion to vacate agency actions (Dkt. 200) is **GRANTED in part** and **DENIED in part** as set forth herein.

Dated this 31st day of July, 2014.

BENJAMIN H. SETTLE
United States District Judge